Today's case is No. 24-1869, Kevin Brown et al. v. Saint-Gobain Performance Plastics Corporation et al. At this time, would counsel for the appellants please come to the podium and introduce themselves on the record to begin? Thank you. Good afternoon, Your Honor. My name is Mark Shefo. Do you want to just move the mic up a little bit and speak a little louder?  Is that better? Yes, much better. Yes, Your Honor. Is that better? Yes. Thank you. So, I'm Mark Shefo, and I represent Saint-Gobain and Mr. Bushnell. Shall I begin? I would like to reserve three minutes, if I could.  Thank you. So, good afternoon, Your Honors. As I said, I'm Mark Shefo, and may it please the Court, we appreciate the Court accepting this important appeal. Under Rule 23 in ASICOL, we respectfully request that this Court reverse and decertify the class that was certified by the District Court for three primary reasons. First, in attempting to create a liability issues class, the District Court did not carve off liability. It fractured it. The proposed class trial will not resolve important issues such as proximate causation and injury of fact as to the two causes of action that were certified, trespass and negligence. The proposed trial will not resolve whether any of the identified sources of PFOA exposure other than Saint-Gobain was responsible or caused any of the injuries. Can we do them in pieces? With respect, why don't you start with trespass? Yes, Your Honor. In terms of, well, I think the trespass is, I think they're all tied in. I think what the Court did here is he specifically said, I think at page 51 of the record, the Court identified the issues that were individual for both trespass and negligence. Whether the property owner purchased or sold a property at an inflated price during the class period. That's not going to be relevant to liability on trespass. The extent and duration of contamination during the class period. That's not going to be relevant to liability on trespass. Well, Your Honor, I think it is because to the extent. I thought the District Court held it under New Hampshire law. What was relevant on trespass was whether there was an intentional placement of a molecule on the property, period. It is. That's one of the issues. Well, first of all, I think it has to be intentional. I think also here, what the Court did was it basically, I believe, determined that a model can be used and uninjured plaintiffs could be. That's a common question. No, I think that's an individual question. The question of whether the model can be used? I think whether the model determines whether there is any contribution or contamination of any property. How did you plan, according to what you said to the District Court, to refute the plan, the model showing that? I think, Your Honor, that's exactly why we got here. At the class certification stage and at the Daubert stage, we identified numerous individual issues. Let me answer that question directly. The record shows, and of course this is plaintiff's burden as Your Honors have determined in respect to there's actual testing, that 50% of the homes that were tested have levels that were That's challenging the model. No. The Court determined that there was these individual issues because the Court recognized that the model does not prove individual determinations or exposure at any level. That's essentially why the Court determined. And that's why he basically said the nuisance claim could not be certified. Correct. I'm asking about trespass. Right. And I think the same is true here. The proximate causation issues here and the injury in fact are what the Court bifurcated because the Court determined that there will be no determination about any individual property at this stage. I'm sorry, Your Honor. That's the point here is that the Court basically said We're just maybe reading different opinions. I just thought with respect to trespass, it said there was a model from experts by plaintiff that the molecule would be on every property in the group. But that's just not factually right. Okay. That's a common question whether that's true or not. No, I think that's an individual question because the Court Isn't that going to be challenged the same way in every single case? We need to be able to prove, and this goes to the superiority and the predominance issues, we need to be able to prove, for example, at the trial there's 10,000 putative class members. 1,000 of them have had well testing, 1,000 homes. Well testing is about groundwater contamination. This is about whether molecules are on the property. Well, the issue here, Your Honor, is not whether there's molecules on the property. For trespass, I thought it was. Well, but ultimately the damage is that the plaintiffs are alleging. That's fine. That's about damage. It's just not liability. Well, but it's a causation issue they're tied together because the plaintiffs are claiming that the causation, that the trespass, the negligence, the nuisance, cause diminution of value. So it's not a case about is there an intent? Do you have to prove diminution of value for liability for trespass? In order to For liability for trespass, do you have to prove diminution of value? Well, that's what the Court has certified as part of the injury analysis. Yes, there has to be an intentional effort to trespass, and also what the Court determined is that there is no individual way. There is no common way in order to determine even trespass because we know, for example, that the model is a device that basically spreads across potential exposure. That's the starting point. That's what the New Hampshire Department of Environmental Services said. We also know when you look at the actual testing that 50% of the actual houses that were tested have either no exposure or they have de minimis or below the regulatory threshold. So the point is actual testing results show that there was no trespass. There was no injury. And that's something that will have to be determined on a case-by-case basis. As your honors have said in Assicole and other cases, we need to be able to prove on a case-by-case basis whether, in fact, there was trespass. And the same analysis for nuisance applies. The Court said we can't determine whether there was any groundwater contamination using a model, and therefore there is no common issues. I'm confused by your answers. Puffer cloud goes up, spreads over an area, disposes, and lands on the area. They put on an expert who says, well, for these two blocks here, every one of them, I can tell by the wind speed and the amount of volume of the clock, and I've done these analysis, every one of them got some of the chemical onto it. And that's how we're proving trespass. That sounds very common to me, a common methodology. You then come back, and you can either say the model's bad, or you can say, well, we can show on these individual cases that there is none there, so that means the model's bad. Plaintiffs lose, not just the individual but the whole thing, because they hinge it all on common proof, and the common proof failed. What's wrong with that analysis? Well, first of all, your honor, that's certainly not superior, right? That's exactly what I believe this court said is inappropriate in Asseco. No, no, no. Asseco posited that you'd have a lineup of everybody in that area trying to prove whether it hit them or not. You wouldn't do that as a defendant. You wouldn't take that duty. You'd just need to prove the model was wrong, and you could prove it wrong by showing there are a few houses here that got none of it. But here's the thing. First of all, this is what the court said. Or you could prove it, which is how I thought you explained you were going to prove it and how the district court seemed to understand you were going to prove it, by putting on different experts who say the model doesn't work. But here's the thing. This is not a superior method. The court said at A46 of the appendix, on this issue the court recognized that individual or site-specific analysis may be needed to determine whether Saint-Cobain's emissions are a substantial factor among those sources. But it's not about trespass. Yes. Because substantial factor is not relevant to trespass. But the court has recognized, and the experts have recognized, and DES has recognized that this model does not determine actual emissions on a model. And let me just say this. Even if it did, Your Honor. Then the model fails and you win. It's still common. But if the model fails and we win, even if the model is accepted, right, there's going to be no liability determination as to any specific plaintiff. No, if the model is right, then a molecule landed on every class member's property. And as long as the exhaust of that cloud was intentional, you've got trespass. See, but that's not what the model does, though. You might be right. And the question of whether the model does that or doesn't do that, the district court concluded that is what the model did. Well, if you're saying that's wrong. It is wrong. That's a common question. It's not because the way this is like. . . How are you going to prove it's wrong? What are you going to do at trial to prove it's wrong? What's your plan for how you're going to disprove that? I will explain that. Before you say anything else, just tell me that. What are you going to do? First of all, DES has indicated, the Department of Environment, that the model is not used for that. So we're going to basically show that. So you're going to put on an expert saying that. We're going to also basically show individual records of all these test results. We're going to show the plaintiff's own expert looked at six of the 18. . . He looked at 1,800 transactions. So you're going to show that his methodology is no good. But here's the thing. . . That's common every single time. The only thing you mentioned that's not comp. . . Why are you getting frustrated? No, I'm not getting frustrated. I was just trying to explain. . . Of course I'm not, Your Honor. I'm here to try to help you, Your Honor. I'm trying to explain that the point here is that even. . . Let's assume and pull that thread for a minute. Even if all of that is true, Your Honor, what we will have is really no liability determination because we will have to go back and look individually house by house. In this case, being practical. . . Your Honor has been practical. This is not about whether there was one molecule. . . Why would you listen to Judge Katz? I'm sorry. Why would you go house by house if you've proved the model doesn't work? Well, because, first of all, if we go through this entire. . . Conversely, if you've proved. . . If the judge has determined after your attempt in the liability phase to prove the model doesn't work that the model did work, then why would you go house by house? We know that it was on every model. Then you're just fighting about the harm that caused from that. Did the value go up? Did it go down? That's a damages question, not a liability question. I think the Ebert Court in the Eighth Circuit and the Gates Court in the Third Circuit addressed this exact issue. And what they said is that you need to have, in order for. . . And I believe Asikol said this as well. It has to materially advance the litigation, right? So what's going to happen? Let's pull this thread. First of all, it doesn't do anything with respect to negligence, right? You're only asking me. . . We're just talking about trespass. We're talking about trespass. The model, admittedly, and the court recognized this, right, does not determine any specific deposition on any specific property. What it does, and this is where I think there's some confusion here, Your Honors, is that you first do this model. It's called AIRMOD, right? And it basically tells you a potential area of exposure. That's what DES did. They didn't go in and then make determinations. They then did soil samples. They did water samples. And you make determinations. We know that there are no. . . There are 50% of the houses that were tested that have no positive readings or negligible. Yet, under the model, they would be within this entire zone of potential. . . You can keep going. Of potential implication. You keep saying. . . We're talking past each other here. I apologize if it's our fault, but we're just trying to focus you on the trespass claim and the fact that the plaintiffs proposed to use a model which, if proper, shows that there was a deposition on everyone's property in the class. That sounds to me a very common basis of proof that they're limiting themselves to. You then are going to come in and attack that common basis with experts saying the model doesn't make sense and with proof in the pudding proof by showing some individual properties where you can prove there's none and say, aha, the model doesn't work, we win. I'm having trouble, and I think Judge Barron, Chief Judge Barron as well, seeing why that doesn't sound like a common proof to your advantage because they're hinging everything on the model. And, Your Honor, let me say this. I understand the Court's question, and I think I would concede this, that if the model did that, then it could actually show some level of common proof. Here's the concerns and I think the core issues that we have on Rule 23, and this is what the Ebert Court said and this is what the Gaines Court said, using the specific model in these issues, that even if you found that, because the rest of the elements of causation, and in this case are fractured. There's no other element. That's what I just keep getting confused by, for trespass. Because let's assume the model basically determines, and the judge basically says what the case is about. This is what he says. Excuse me, Your Honors. With your limited time. Yes, Your Honor. It would be interesting to know that even if you assume without conceding that the liability issues on trespass will be common if the plaintiffs limit their proof to a common methodology, that then poses the question, well, even if that is common, is it proper to have certified the scope of what the Court did, and can you just do a piece rather than the whole? You might want to move on to one of those. Yes, Your Honor, and thank you for that. And I apologize if I was kind of being dense on that. That's where I was going on this, because the Court says that the question to be asked, rather than class-wide injury, the common question in this case is the geographic scope of, this is at 830 of the record, of PFOA contamination attributable to St. Cobain and whether it overlaps with the class area. So basically the Court says that we're not going to be deciding a class-wide issue in this initial plan. But to the extent that you could, let's for a minute concede that this would somehow show you where, what the contamination was, the subsequent issues in this case and the fracturing of these issues and the requirement. Can I just, just for terminology before you go to this next move, so we're not talking past each other, when you say contamination, do you mean contamination of the groundwater, or do you mean presence of the PFAS on the property? Well, I think there's two elements here of contamination. I mean, I think. Which of those two things do you mean when you say contamination? Well, the plaintiffs allege both. I can be more specific. I mean both. It could be either air deposition, which then goes to the soil, which then allegedly goes into the groundwater. So I think that's essentially what this case is about. There's two elements. Okay. So just going back to Judge Chiara's question he was trying to move you to. Yes. Assume there is a common method of proof of presence of the PFAS on the common means of proof. Assume that. Yes, Your Honor. What was the problem with certifying that claim, certifying the liability class as to trespass? I think the, well, if you assume that, then I think that there are less issues with that. Are there any issues? Well, I think because this is a class action, right, I think the answer to that would be the superior method would be to have individual trials like we have. There are individual cases like we have right now, because you would still need to determine any types of damages, because ultimately the plaintiffs are not suing about one molecule, right? I think the plaintiff's counsel will tell you that. They're suing about whether there is ultimately loss of property value in a place where the plaintiff's experts say the property value skyrocketed. The district court's response to that was it's common to say, or typical, or what's a word that won't be a Rule 23 word, often happens that we conclude that when the common issues, when the liability can be proved as to all the elements on common issues, the fact that damages would require individuation and therefore individual trials does not suffice to defeat certification. Yes. And then the district court said here it would be superior, at least as to trespass, though it also says this as to negligence, which we can bracket for the moment. But it would be superior to do it by class, because those common questions of proof, there's no reason to repeat them in the 1,000 trials on damages that would follow, therefore no superiority problem. Yes. You respond that there is a superiority problem, and in the cases you cited supporting that, I didn't see one in which a court of appeals had held, a district court that had done that analysis in certifying, erred in a case in which all the elements could be proved as to liability by common. Is there such a case in which a court of appeals has so held? I'm not aware, Your Honor, but here's the one I think distinction, if I may. Yes. The court is, this is not, and forgive me, I've read this court's jurisprudence and I know there's an element of practicality and what kind of makes sense, right, which I think permeates a lot of your decisions. And this is a situation, right, where we look at, as I said, it's not about a molecule or kind of a potential issue, it's about property loss diminution. If you did that, if we had an entire, if you certified a class just on whether there was a potential scope of trespass, right, the court has already said nuisance is not a common issue. We've made the arguments, you know, on negligence, right, we'd have to deal with all of those. And then even if, and right now there's six or seven plaintiffs and houses in the case, this would encompass a 65 square mile area of potential deposition with 10,000 claims. So we would have a trial and at the end of the day, if we won, it would not bind anybody because they would say, well, that's just a model that potentially shows exposure of trespass, but we have all these other claims. And if we lost, then the plaintiffs would still have to come forward and basically show individual, which I think are causation elements of, you know, of showing that they, how the harm contributed, how the trespass contributed to the diminution values, particularly when you have test results in specific cases. And even if you show it on a class-wide basis, that there was a potential for dissipation of PFOA in every individual trial that you need, or you'd have to call 2,500 or 10,000 people, as the court in the Yakov, as your Honor, I think, wrote in the Yakov case. And in Asikol said, anytime you have to bring thousands of people to trial to talk about this, right, how would we prove it? This is, I guess, just to judge Carter's question. Those are all liability. Those all went to the question of how would you prove liability. You keep saying here, even if the common proof showed there was a potential deposition of the molecule, that's not what the district court concluded. The common proof we're positing would show there was a deposition. Yes. Once that's shown, all the elements of trespass are proved, and then there are questions of what are the damages for that. That could be none in some cases, maybe many cases. Those would all have to be proved individually. The district court doesn't say otherwise. I'm just asking, has any court at the court of appeals level held that when a district court has certified a class on a claim based on a determination that all proof of liability would be common, the class cannot be certified simply because damages would have to be individualized? No. I think typically if all elements of liability are established, the law is well settled that damages can be different. I don't think there's any... That's something we've all learned, so I agree with you. But I think I understand that that's what the district court said, but I think also this court will and can and should respectfully look behind that because I think there's no way of reconciling the district court saying we can't determine nuisance on a class-wide basis because the testing and the modeling does not show us that. That's what he said, right? That's because for nuisance it's not enough to show presence of the molecule. The element is different for nuisance. Well, this is what the court said. It said the amount of PFOA contamination present in the individual's groundwater and attributable to Saint-Cobain during the period is one of several inherently individualized questions which plaintiffs have not presented. Now you're talking about contamination of groundwater, not presence of the molecule on the property. But that's not... I mean, Your Honor, but respectfully, that's not what this case is about. I mean, that's not what we've been litigating for nine years, about whether there was one now. The trespass claim, that's how I read what the district court said it was about because there's a trespass when the molecule lands on the property. So let's pull that thread again, Your Honor. So basically, if we were to basically have a class action on that specific issue, right, as you said, there's so many of these other issues that would then need to be tried at an individual basis, right? The nuisance claim, the negligence claim, and it wouldn't bind anybody to anything. I'm confused now. The nuisance claim, as I understand it, the district court does not propose to certify that claim. That's right, Your Honor. So why will there be a bunch of individual trials on that claim? Well, because there's still lobbyists in the case. There are six plaintiffs, right? Right. Their request to represent class members on the nuisance claim is being denied. That's correct. So they'll try their six nuisance claims, and they'll try their trespass claim, and in the scenario we're talking about, the class members would be parties only to the trespass claim. That's correct, but it would not bar any individual, other folks, from bringing nuisance claims. But you're right. But the analysis of why the nuisance claim cannot be certified, I believe, is the same for trespass and for negligence. And forgive me if the Court just disagrees with me. I just see it, you know, respectfully. Well, it's not that I'm disagreeing. I guess I'm just looking for an argument as to why. And I think that argument has to run through the elements of trespass and then explain what it is, given those elements. You made one argument, as I understand the district court articulating it, which had to go to the intent element of trespass. That's right. And then the district court says you misapprehended what intent means, and therefore nothing you're saying shows it can't be a common question, which doesn't mean plaintiff wins. It just means the way we'll resolve it would be the same if we did one trial or a thousand trials. It would be the same exact arguments will be made. The same proof will be involved each time on the question of intent. So let me – and thank you for that question, Your Honor. And I'm just going to – you will stop me when you think I've overstayed my welcome. On the issue of intent, as I understand the Court's decision, what he basically says is we're going to look at periods 2003 to 2006 and determine whether there was some type of just common issue and common intent, right? So on that, I think we go to the individualized issues, right? One is to basically – and there's no plan here, right? That's part of the ASICOL issue. There's no specific about how this will be determined. What someone or a company might have known, it doesn't talk about specific intent to a specific property within a 65-square-mile area, right? That is not even addressed. There's no analysis. And he says that's not required for the intent element of trespass under New Hampshire law. The intention only has to be to put out the puffer cloud with knowledge of the science about what the radius would be of a cloud of that type. And if the science was such that they would have known in 2003 that if you put out that much stuff, it's going to land on all property within this area, then intent is satisfied. That's what the district court says. If that is New Hampshire law, then he says it will just be common. How are you going to disprove it? I'm going to say that model is not good. It's still common. This trial is probably not exactly on all fours, but it would also be, following the court's assumptions, really like a fail-safe class. We have this trial, and it determines about whether – and people say, well, we don't think the model is exactly right, and it doesn't apply to everyone. It doesn't protect – there's no judgment that would be entered in favor of saying there's been no trespass. Time out. You're giving away your own farm here. Wouldn't there be a judgment on the trespass claim, if you proved the model is no good, to be a judgment for your client? Your Honor, I can't talk out of both sides of my mouth because I don't think that's what this model, as I've said, does. Look, the New Hampshire Department of Environmental Safety said – well, the model doesn't work, but I'm going to your merger and bar issue. If the court certifies the trespass claim on everything except damages, and you win on liability because you proved the model doesn't work, then doesn't judgment enter for you against all class members on the trespass claim? The quick answer here is that we don't know. Someday you're going to – unless we reverse, someday this question is going to get put to you, and you'll want to think very carefully what your answer is when you say no. I'm very confident what it will be at that time. Well, again, we're officers of the court, and I have a duty of candor, and I can't talk out of both sides of my mouth here, right? I think the issue here is that, look, the court said rather than class-wide injury, the common injury is the geographic scope of PFAS. This was at 830, contamination attributable to Saint-Cobain, right? And I know you're going to tell me that that doesn't apply to trespass, but I think it does, right? Because the court is saying there is no way of determining individual deposition of any property, whether it's water or whether it's air, right? We can't do that using this model. That's why it says rather than class-wide injury, which would be trespass, the common question is the geographic scope of PFAS, right? So what we're going to do is we're going to have a trial that basically we say, does this model have a 65-square-mile potential scope, right? And the DES says that's what you can use it for. But when they determine who gets bottled water, who basically has remediation, who gets new hooked up to lines, they look then at individual testing. So if we had a trial and it said it's not a common question, it's just the geographic scope, not whether there was trespass, not whether there was diminution of value, not whether any of that, if that's the question, that's the only question the court identifies at 830 of the record, then it's not going to tell any specific plaintiff anything. They're going to have to have individual trials to find out if they did. And if we win, all it's going to say is that this geographic scope is not 65 square miles. Didn't the court certify? Are you saying the court didn't certify the trespass claim? The court did certify it, but this is what he said. So there's going to be a judgment on the trespass claim. If the plaintiffs fail to put on any competent proof, you win. Well, I don't think the court certified the whole trespass claim. I mean, he said he did, right? Look, the courts often will say he said he certified both liability and proximate cause for both negligence and trespass, and I don't think he did. To certify the trespass claim at a minimum, put to one side whether it's sufficient, but at a minimum there's got to be a common issue on the trespass claim. And so what you read there sounded to me very much like what I recall reading in the judge's decision where he identified a common issue on the trespass claim. That doesn't mean that a judgment is limited to the common issue. He certified the claim. I understand that, Your Honor. I mean, if it goes farther and there's potential. So how does that affect your claim that this is a fail-safe class? I think because here there's such uncertainty. We're arguing, or I'm arguing, Your Honor, as you're listening and asking me questions, about all these hypotheticals. You know, when I came in and when we were briefing this, you know, basically the courts were very clear that, you know, you can't have kind of questions about what the trial is going to look like. We don't know who's going to testify. We don't know the specific questions, right? There's no mechanism to remove uninjured plaintiffs, right? So the point is it may be all or nothing, right, that either it's trespass or not, but it may not. We don't know what the question is. I think there are scores of uninjured plaintiffs, right, people who have no deposition, who have – and there's also the question here, it's not a matter of whether there's one molecule. This is a period from anyone who bought or sold their property from 2016 on, right? So if somebody basically sold their property two days ago, 2016, 2017, bought their property, kind of what they knew, deposition of time, right, this doesn't just stay on the surface, right? That's the allegation. I think that's true. So if there was a deposition of a plume, as you said, or emissions back in 2003, 2004, and it has now kind of traveled through, even if it was there, traveled through the ground and then through the groundwater and it's dissipated, it's gone, as is what happens, then there is no trespass to people who bought their property 10, 20 years later. And maybe there is for people before, but this isn't going to answer any of those questions, not one. And then they still have to deal with – I've never seen a case, Your Honor asked me, of certifying a liability. I've never seen a case where a court has basically said in a property damage case, we're going to carve out one cause of action and we're going to allow a class to proceed on that when there's the negligence claim and there's all kinds of questions. And I think that's exactly what – I'm sorry, were you going to ask a question, Your Honor? Well, I think you're making an argument I didn't see in your brief, but I can see the potential basis of it had it been made in the brief, which is just the issue of let's posit class certification for the trespass claim was permissible. So, in fact, it was a common means of proof. There would be individualized damages, but the superiority of not having the common questions of liability resolved a thousand times over the same way suggests that class certification of trespass would be permissible. If I brought solely a trespass claim, then there'd be no problem with certification. Do I now jeopardize the justification for certification of the trespass claim if I also bring a negligence claim that I think similarly can be proved in common? I move for certification, I lose. It turns out that one can't be proved in common because the elements of negligence aren't susceptible to class-wide common proof. Why is the conclusion from that that therefore it was wrong to certify the class as to the trespass claim rather than just concluding, well, that one didn't work, we'll certify on this one, and we can handle it through Rule 54B or whatever going down the road? But I don't see what it is about the failure to justify certification on a different claim that jeopardizes the legitimacy of certifying on the other claim. Look, that's fair, Your Honor, but I'm looking at what the case is about. We have summary judgment motions pending on those claims, right? Things may happen, but both of those were certified, right? So you're correct. For purposes of this argument, I'm assuming that they will travel together. But if the court did decertify or reverse on the certification of the negligence claim, you know how I feel about trespass. I'm not conceding it. But, yes, I think that would at least alleviate the kind of oddness of basically having a class who has one claim and separate trials. But I do think I would also look at the superiority claim here in the context of this case. And let's even carve out the superiority between liability and damages. And I know that there can be difference, but if you just look at that issue, the judge gave four sentences on superiority at the end of his brief, right? So basically a finding, as I said, for all the reasons it would be disparate, you'd have a claim that there was a molecule, but all of these questions about why someone bought their property, what the property values were, right now there are six cases, right? And we have in the state courts, we have about a dozen individual cases. People bring these cases individually, right? This class would encompass 10,000 properties, right, that have not brought individual claims. And I think from a manageability perspective or a superiority perspective, this is, you know, I think, as I said, the Third Circuit in Gates and I think Ebert is just like this. Answering this one narrow question, right, is I think inconsistent with the underlying policy and rules of this court, Supreme Court, and Rule 23. Any further questions? Thank you. I appreciate Your Honor giving me an opportunity. Thank you. We're going to see you later. Thank you, counsel, at this time. Would counsel for the appellees please introduce themselves on the record to begin? Good afternoon, Your Honors. My name is Kevin Hannon. I'm a singleton striper. On behalf of plaintiff appellees, Kevin Brown and the others in the class, this court should affirm the district court's decision granting 23B3 certification as to liability for trespass, negligence, negligent failure to warn. I have six summary points here that support that conclusion. Number one, the trial court properly certified liability claims after a rigorous 23B3 analysis of the facts and all elements of each cause of action. And the evidence of that is that he certified less than the entire action. Even though we sought a broader certification, the court has authority to certify less than the request. It's not an all or nothing proposition. Number two, the case does not present any issue of interpreting Rule 23C4 because the court properly analyzed each element of plaintiff's claims under 23B3, including manageability and superiority. Number three, liability certification is clearly a superior method of moving the claims of over 11,000 properties toward resolution here, where common facts provide answers to common questions that are central to the case in all these claims. So let me ask you about what we were talking with your opposing counsel about. Are we correctly reading the record to indicate that your proof on the trespass claim as to which properties have and which do not have at least some deposition of the pollutant is going to be limited to common proof of an expert who's going to say, everyone inside this area has it and could be disproved by showing that people inside that area don't have it? Yes, Your Honor. And, in fact, at page 843 of the court's decision, the court says the plaintiffs assert that they can prove causation on a class-wide basis through their experts' opinions that Saint-Gobain's emissions contributed to groundwater contamination where present across the class area. And if the trial judge or the jury finds that your common methodology of proof doesn't work, then I take it judgment would be entered on the trespass claim against the representative and the class members on the trespass claim? As the class stays certified, yes, Your Honor. What do you mean if the class stayed certified? Well, we're here and you're going to make a decision about whether the class stays certified. I'm assuming for these questions, I'm assuming that you get to go forward with the class proceeding on the trespass claim. Your proof fails, and I want to understand that you're not saying you get to do a redo. That's it for the class members. They will have lost their trespass claim. Yes, Your Honor, that's correct. And then how does merger and bar work here? For the named plaintiffs, if they brought a trespass claim and didn't bring a nuisance claim and then lost or won, their nuisance claim would be gone. It would be merged into the judgment and barred under standard analysis. What happens to class members when, in theory, they both have those claims but only one is certified? Well, it's the certain issues, Your Honor. We could attempt to use collateral estoppel, but it's very clear from St. Cobain's briefs that they're going to challenge whether, as to the individual determinations for these class representatives, whether they apply to any other case. So we're going to be trying that issue over and over and over again. Let's assume you go forward, you try the trespass claim on a certified basis as a class, and you win. What happens next? They're still saying no damages and you don't agree on a damage figure. Yes, Your Honor. So at that point, then there are trials in a way that the court can manage. It may be groups of trials. It may be areas of the contamination. St. Cobain gets to challenge for any individual trial whether there's another source that also affects that property. Is it a problem under Rule 23 that the district court doesn't say what you're now saying and instead simply said the reason the class that he certified as to trespass is a superior approach rather than no certification at all is because it avoids in individual actions those common issues pertaining to liability. So he definitely says that. But as I read his opinion, he doesn't say anything about how we're going to handle the follow-on damages trials. He certainly says that there's case law that says the fact that damages are individualized is not a reason. That's all true and there's case law. But there is just the practical point, what is going to happen, and does it make sense to allow the certification to go when from the reviewing court's perspective, we just have no idea what's going to happen, and let's say worst case, suppose the district court wrote this into the thing, superiority for all the reasons I gave, and as to what's going to happen, here's what's going to happen. There will be 10,000 trials in New Hampshire. One by one, we'll just take them as they come and we'll litigate to the death on how much damage is for each of them. That's my plan. If the district court said that, would we still certify? Would certification still be legitimate? Or is it important to the case that what you just said is likely to happen? There is some manageable way. We can do bellwether cases, et cetera. Because the district court doesn't say one way or the other on that point. And so I'm just wondering whether it's sensible for a reviewing court to just read into it that the district court must have some plan, or whether we should be requiring the district court to at least articulate what it would be along the lines of what you're saying could happen. Well, Your Honor, I think, first of all, the trial court tells us what that is. And for example, the trial court tells us, the district court tells us that intent is going to be tried. The district court tells us that the geographic scope of contamination is going to be tried. That's all how the common issues will be tried. Correct. What it doesn't address is that if you win on liability in the common proof, which is clear as day as to how that's going to work and why that will be manageable, what is unclear is if you win on liability, as Judge Ciotta was just asking, what is going to happen. You then said, well, it will be manageable. We'll do it this way. We'll do it that way for damages. And we'll do groups of cases. District court says none of that. And I'm not faulting the district court for not having said that. I'm just wondering if it's sensible for a reviewing court to just rely on your representations about how you think it will go when we haven't heard from the district court. And I guess just to make that stark, one implication of that is it's as if we'd be certifying even if the district court said, my plan is 10,000 individual trials fighting to the death about what the damages were case by case. And if the district court said, that's my plan, would it make sense to certify even in that circumstance? Or is it necessary that there be something that sounds a little more practical? Well, Your Honor, first of all, the court should certify. And the court should certify because otherwise we're going to have 11,000 trials. And this is the thing. Saint-Cobain says, oh, we're going to have all these follow-on actions. But the follow-on, the result of their appeal is that we're going to have 11,000 cases from start to finish, retrying all these common issues. Do you think 11,000 people are going to bring claims over this? Your Honor, this is. How many have so far? Well, they're class representatives, and the class action was filed early on. So they can rely on the class action? Absolutely, Your Honor. Right, but how many? Absolutely. And this problem has been. How many would sue if they couldn't rely on the class representative? Well. We would guess less. Your Honor, obviously that's not in the record, and I would be. No, but this is the practical question. So I think just to go back to it. Okay. So, Your Honor. One of the reasons that the class device, it's in the rules, is that it enables claims that otherwise wouldn't be brought to be brought. Correct. So we can then hypothesize without looking into the record that if there's no class certification, fewer claims would be brought. Well, Your Honor. So I guess what we're then asking is, okay, so the practical consequence of certification and then a finding of liability on trespass is no reason to think we wouldn't have 11,000 damages cases. Your Honor, this has been a problem, and actually Judge LaPlante documents this, where thousands of people's drinking water was affected. Over 1,000 wells have been, private wells have been affected here. An entire municipal water system serving over 10,000 people has been affected here. Wells were shut down. Bottled water was provided. People lost the use of their wells, and water was replaced. So less than 10,000, 12,000, but many people would step forward because of the significant impact St. Colbain has had. Is the implication, which is fine. This is not a trick question. What I hear you saying is the district court has no responsibility to say more than it said about how the damages cases would play out in order to justify its superiority determination. I believe that's correct, Your Honor, for two reasons. First of all, the court says on page A53 and A54, further discovery and findings from the liability phase will inform the format of the damages phase. So certain information from the liability phase will inform it on how to manage bellwethers, however many ways the courts do to manage those claims. Second, I'm sorry, Your Honor. What's the typical damages that you're talking about here? When you say typical, you're saying in terms of amount? Yes. So, Your Honor, and this actually supports class certification, but St. Colbain reports the diminution in value and loss of use dollar value that our expert bell reports for the 11,000 properties, I think it's $500 million. If you divide that, it's about $55,000 a property. And are there other damages other than diminution in value? That would include loss in use, and then there would be other damages of annoyance and discomfort, loss of use and enjoyment. The court identifies those properly as non-economic damages. Are there any personal injuries claimed? I'm sorry? Are there any personal injuries claimed? Not in this class, Your Honor. This is only property damage, interference with property rights. Go ahead. I'm sorry. I just want to make the point, Your Honor, that so if we look at the court's order, the court's order discusses the opinions of eight experts. It's already gone through the Dauber process. That's going to show for trespass that a molecule landed on each property. But it also shows, Your Honor, the expense of an individual trial. If we are going to repeat those trials again and again and again, it's going to be way more than $50,000. With respect to the trespass claim, though, and I think this is the thrust of your opponent's argument and why the damages thing, he says should be of concern to us in certifying, even if there's common proof as to liability on trespass, which is you can prove liability on trespass on your theory by simply showing a molecule landed on the property. But it is quite unlikely you could show damages if that's all you showed. Correct? Well, Your Honor, I just want to point out there's something that the counsel said that's not quite right. We showed, and it's at the record, that's Mr. Sullivan's report, June 2020, Joint Appendix 4338, 4744, 4382, 4383. The deposition rates at individual properties, they're not non-negligible. This is serious contamination. And if the defense, as it just suggested, said there's these uninjured class members out there, where's the chart? There's no proof of uninjured class members here. Maybe that's what I was getting at is the average diminution value that you identified I would think would be a function, plaintiff by plaintiff, of the degree of deposition of the chemical on the property. Yeah, and if I may answer that question, Your Honor, that's not correct. In the court's order, it goes through the evidence with regard to diminution and what the expert showed. And this was on page 824 of the court's order. It indicates that Bell, who's the plaintiff's expert, identified one category of properties that were with contamination levels above the maximum contaminant level and a separate group of properties below the maximum contaminant level. So that's what you say grouping may be the way that this gets managed. And basically the idea is we can infer that, the district court's understanding of that from its statement, that as things play out on liability, that will inform how we do damage. Absolutely, Your Honor. And then, oh, I'm sorry. I got the buzzer. How do you, you were saying earlier that what would remain, I had asked you what remains to be tried individually, and you were listing damages, and you were also saying there's alternative causation defenses, that some other person is responsible rather than the defendant. Right. The defense in the court says this. It finds it at footnote, I think it's 92 of its order. It says defendants haven't proved what properties and any amounts of these alternative sources. So if defendants can come forward with some proof that some localized source, which the court doesn't find and it says it in that note, it would bring that forward. In addition, the court, and to go back to one of the court's questions about the issue of nuisance, there's a difference between whether there's an interference, stuff on the property, and whether that interference is unreasonable for any individual person. And so the first component, whether there's an interference, again, going back to the efficiency of this case, whether there's been an interference is going to be proved by the modeling, which St. Cobain doesn't rebut as to St. Cobain. And then whether that interference is unreasonable would be handled by the second trial, the amount of use. So before you conclude, where does negligence fit into this? So I understand the reasoning behind the district court as to why nuisance is out, given what has to be proved, and why trespass would be in, given what has to be proved. I'm a little shaky on understanding where negligence sits in between those two and what has to be proved. And let me just put it this way. It would be surprising to me if negligence in this context just meant trespass done negligently. But there are times in which it seems that that is the district court's understanding or your view of things. And it certainly makes sense if negligence here is just negligence trespass, obviously oxymoronic statement. But if that's what it is, then I understand the logic of why it's common proof. But if it's not that, I'm struggling to see why it's not more like nuisance, because it would then seem that what we're interested in is not just the presence of the molecule, but what it did once it got there as part of the elements of liability of negligence. Not for negligence, Your Honor. So the court at page A41 identifies foreseeability as a component of negligence as a common issue. That goes to what St. Gobain knew when, when it was using chemicals. I'm interested on the back end. In trespass, proof of the presence of it is the invasion of the exclusive right of control. So then you've got the complete elements. What is the final element in a negligence claim? Is it consummated when I show there was a foreseeable risk of what, and I didn't take care to stop that thing from happening? At times it sounds like you're saying it's enough if there was a foreseeable risk and I didn't take care to ensure that a molecule didn't end up on the property. That's different than saying I have a duty of care to make sure that the foreseeable harm that would come from my action wouldn't occur. And if we're talking about harm rather than mere presence of the PFAS on the property, it starts to sound to me a lot more like the nuisance case and therefore something that's not going to be provable through the model itself. Well, Your Honor, the trial court correctly holds that the, I'm sorry, I'm using the cause in fact of contamination on the property element of negligence is a common element for all properties. I'm just, in trespass we had all the elements proved commonly. Well, that's for negligence as well. For negligence, are you saying there are some elements that would not be proved in common? No. With negligence, as the court found on page 44, cause in fact and proximate cause would be proven on a common basis. Of what? What is being caused? The intrusion on the property. So the final element for negligence is just the same? Presence of the molecule is enough? Presence of the molecule is enough. So that's just negligent trespass. Well, it's the issue then is what damages flow from that negligent trespass. Well, that's true in negligent trespass. That would be true in trespass. Yeah, that's absolutely true. So New Hampshire law has trespass. You have to prove it intentionally. But then it has negligence where you just don't. Well, negligence you have to prove that there's a duty and breach of duty and that that's proven by foreseeability and the magnitude of the harm. Right, but the magnitude of the harm. That's the whole game. Is the magnitude of the harm just presence? The foreseeability. Forget foreseeability. Of what? Presence of the molecule or magnitude of the harm from lacking of care? It's the presence of the molecule and the nature of the molecule that's present on the property and what naturally flows from that. Okay, so all of that potentially is going to be more individuated, which the district court anticipates because it says to the extent that there are aspects of negligence that would be individualized, common issues still predominate because foreseeability would be common, X would be common, Y would be common. That's just different than in trespass where it said everything is common. Your Honor, when you're releasing a toxic chemical, you're not releasing a piece of dirt. And so when you release a highly toxic chemical that has a regulatory response and an impact on the use of drinking water, foreseeability and the foreseeability of the magnitude of the harm is a common issue across the entire class. What did Saint-Gobain know about these toxic chemicals? What did it know about other situations where groundwater, drinking water had been harmed? One element is going to be what did it know about the anticipated magnitude of the risk? Two property owners, manufacturer one makes something, there's a risk that maybe two molecules will get on the property. Jury finds it's not unreasonable to take that risk. Situation two, much more serious pollution, they find it is unreasonable to take that risk and the interference was unreasonable. So you start to get into I need to look at each property on that element. First of all, Your Honor, I don't think at all again because of the nature of these chemicals and the potential interference from that chemical be present on the property. And so it's a highly toxic chemical. The record shows it's persistent. There's no disagreement on that. The evidence shows that from our experts who show the presence. Dr. Detweiler modeled this contamination into 2030. There's probably some radon in this room as we're standing here, a very small amount. Not going to hurt anyone. Poison's in the dose. Isn't the same with PFAS? You're saying there's no distinction between having a molecule on your property and having a trillion, having 20 parts per million? Well, the evidence shows, Your Honor, that it's not one molecule here because bottled water was provided to people. Okay, but then you're getting into separating each property. We're not because it was a common response by NHDP. I'm sorry to react that way, Your Honor, but it's a common response by NHDES and Saint-Gobain to hook up mass properties to municipal water and lose the use of their wells, to provide bottled water property after property after property. And that common response shows the significance of these chemicals. They're not de minimis amounts, and there hasn't been a de minimis impact on these people's properties. And so that information is going to be common. And so the magnitude of the harm, again, it's going to go back to, what did Saint-Gobain know when it was releasing these chemicals out of the stack, totally uncontrolled, totally uncontrolled, whether it would affect people's drinking water? What did they know about that? What did the science tell them about that? That's a common fact. Let this help illuminate for me this point that you make. Why then was the nuisance ruling correct? Well, so thank you for asking that question, Your Honor. The first issue in nuisance is has there been an interference? What the court then found was whether that interference was unreasonable as to the particular property owner was an individualized issue. I'm just having trouble. Why isn't that? How is that different than magnitude of harm? Because everything you were just saying about common means of proving magnitude of harm would seem equally relevant to showing why it was unreasonable through common means. Now, you may be saying we think the district court group, we just didn't appeal it, we were happy with what we got. But insofar as the district court's right on nuisance, I'm having a little trouble seeing why the analysis is different. So with nuisance, there's a difference between the unreasonableness of St. Gobain's conduct, which goes to its knowledge of the magnitude of harm, and the degree of interference on a particular property. That's what the court found. That's the court found, and that's the distinction here. Any further questions? No. Thank you, Your Honor. Appreciate it. Thank you, counsel. At this time, would counsel of the appellants please come to the podium and reintroduce himself. He has a three-minute rebuttal. Thank you. Mark Shefo again for St. Gobain. I'm sheepish to even come because you were so generous with your time, but I'm going to try and be specific on three points here, Your Honor. I would just refer the court to the plaintiff's complaint at page 79 on the nuisance claim. And it's not just about one molecule. Basically what they claim is that contamination including contaminating the air, soil, dust, household water, and those properties with toxic PFAS. So there's nothing about any of those specific issues being dealt with by a model. The second point, Your Honor, that I would raise is that this colloquy, which is certainly incredibly helpful and academic, I think makes the point here. And I think, Your Honor, Judge Brown, you asked the question, aren't these the kind of questions that, I mean, I think in Assacol, right, the judge there at least had a plan. They said here's what we're going to do, and here's how we're going to deal with the 10%. All of these questions that you asked both opposing counsel and me are questions that we don't know anything about. We don't know how this is going to work. And I think it's incredibly overly optimistic. I've been involved in probably a dozen MDLs. The idea that this would be resolved through some bellwether trial process, this is nothing like a bellwether. These are specific issues that are going to have to be dealt with. I'm not aware of a circuit court that has affirmed a Rule 23B3 class action regarding property issues. I don't think there is one. And the issue is that these are just not manageable. They're not superior. Because the issues, even if we have that one molecule, and I would say, based on their own definition, that wouldn't even solve it. But even if that was the case, the questions of what the person knew, household, these are property damages, inherently individual. And I disagree with counsel. Fifty percent of the testing that was done here, and there's only 1,000 of the 10,000 that were even tested, they showed that there were thresholds below the regulatory limits or de minimis. So we may quibble about whether that's harm or not, but we don't know which ones are going to be included or not. That doesn't include the municipal wells. The plaintiffs didn't come forward with individual water or soil testing for basically 90% of the plaintiffs. And then I think in the last minute or so that I have left, New Hampshire Department of Environmental Services, this is at AJA3747, the many generalizations and simplifications inherent in the model make it inappropriate tool for assessing PFOA at a property-by-neighborhood scale. That's the government DES saying that. The results of these models are a tool that allow for the identification of potential areas of interest to be further verified during the site investigation. That's what these models do. It's urged caution in applying direct model predictions for determining final actions and responsibilities. The plaintiffs' own experts, Sullivan JA4096, said the model cannot establish that St. Cobain caused PFOA to be deposited at any individual property. Has there been a Dalbert challenge to the plaintiff's model? Yes, Your Honor. And the ruling? The court did not exclude the plaintiff's expert, but their plaintiff's expert came forward. Remember, this was essentially, I'll call it sua sponte in the sense no one asked for a 23B4 class, right? The court determined to do that. The plaintiffs initially at Class Cert and Dalbert said our expert can deal with all these issues, damages, causation, on a model basis. The court only got to this because he determined that the model didn't do that. And the plaintiff's expert couldn't do it on causation or damages or else we wouldn't be here. That's what their expert tried to do. And the court said, no, you can't satisfy it. That's where he basically said what we're going to do is kind of do this in a piecemeal approach. We're going to try and identify the kind of zone of contamination, and from there we'll move forward. And we don't fault the district court for trying to come up with a novel way of moving the case forward. But the issue here, I think it does go to what's going to happen next. We literally would have to have as many trials as the class were certified. And where I, again, respectfully disagree with counsel, there will only be 10,000 cases if this court affirms the certification. If there's not, we have 10 or so, 12 cases in state court. These are not minimum value cases where people are saying my property is diminished. And there's six or seven plaintiffs here. So this is basically a solution looking for a problem. And I think the only way we would have an unreasonable and unmanageable and unfair situation is if Your Honors affirmed this class. Thank you. Thank you, Your Honors. That concludes argument in this case.